# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01522-NYW

BERTHA N. ROMERO,

    Plaintiff,

v.

ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,

    Defendant.

---

## ORDER ON PENDING MOTIONS

---

Magistrate Judge Nina Y. Wang

    This action comes before the court on a number of pretrial motions in anticipation of the trial set to commence before the undersigned Magistrate Judge on September 21, 2015:

    (1) Motion *In Limine* to Preclude Questions or Evidence Regarding Injury Finance ("Motion Regarding Injury Finance") [#45] filed on August 10, 2015 by Plaintiff Bertha N. Romero ("Plaintiff" or "Ms. Romero");

    (2) Motion *In Limine* to Preclude Testimony from Plaintiff's Expert Witness, Lorraine Berns ("Motion to Preclude Berns") [#46] filed on August 10, 2015 by Defendant Allstate Fire & Casualty Insurance Company ("Allstate");

    (3) Amended Motion to Strike Plaintiff's Expert Disclosures[1] ("Motion to Strike Experts") [#51] filed on August 13, 2015 by Allstate; and

---

[1] Allstate had originally also filed a Motion to Strike Testimony of Dr. Sachar and for Protective Order ("Motion to Strike Dr. Sachar") [#49], seeking to preclude Dr. Sachar's testimony as a non-retrained expert. [#49] Subsequently, Allstate moved to withdraw the Motion to Strike Dr. Sachar, on the basis that "Allstate has had an opportunity to meet with Dr. Sachar and Plaintiff's counsel to discuss the intended testimony of Dr. Sachar. After hearing from Dr. Sachar, and discussing the matter with Plaintiff's counsel, it has become apparent the requested relief is unnecessary." [#68]. The court granted the motion to withdraw on September 4, 2015 [#71]. Therefore, the court understands that the pending Motion to Strike Experts extends to Plaintiff's

(4)     Motion to Amend Complaint and Add Exemplary Damages ("Motion to Amend Complaint") [#52] filed by Ms. Romero on August 24, 2015.

These motions, and this action, are before this court pursuant to 28 U.S.C. § 636(c)(1), the Parties' consent [#18], and the Order of Reference [#19]. The court has reviewed the Parties' briefing, the applicable case law, and the comments offered at oral argument held on September 11, 2015.

## BACKGROUND

On November 11, 2011, Ms. Romero was involved in a two vehicle collision at or near the intersection of East Colfax Avenue and North Sable Boulevard in Aurora, Colorado. [#5 at ¶ 5]. The other vehicle was operated by Frieda H. Dishroon, who had an insurance policy with liability limits of $50,000. [#12]. Ms. Romero settled with Ms. Dishroon's insurance company for the policy limits of $50,000. [*Id.*]

At the time of the collision, Plaintiff carried an Allstate automobile insurance policy, and was insured for underinsured motorist ("UIM") coverage for a total of $25,000. [#5 at ¶ 10; #12 at 2-3]. On April 2, 2013, Ms. Romero submitted a $25,000 policy limits demand on Allstate. [#70 at 1]. Allstate has provided her with $5,000 of medical benefits [#12 at 3]. It also offered her $8,500 of additional coverage as UIM benefits. [#12 at 3]. Ms. Romero believes that she suffered injuries that entitled her to additional coverage under her UIM policy, and that Allstate's explanation of its offer of $8,500 (which changed over time) was unreasonable. [#52 at ¶¶ 3-4]. However, Defendant refused to pay the UIM policy limits. [#5 at ¶13].

---

other treating providers, namely, Jonathan Savage, D.O. and William Miller, M.D., who are disclosed on Plaintiff's Witness List [#59].

Plaintiff originally filed suit in the Colorado state District Court, Adams County, Case No. 2014CV30882. [#1 at ¶ 1]. She asserts three claims in her Complaint: (1) breach of contract; (2) a violation of Colo. Rev. Stat. § 10-3-1116 for unreasonable delay and denial of coverage ("statutory bad faith"); and (3) common law bad faith. [#5]. In her Prayer for Relief, Ms. Romero seeks "all general damages, economic damages, all statutory and necessary costs including, but not limited to, expert witness fees and the expenses incurred in investigation and discovery required to present Plaintiff's claims, attorney fees and interest from the time of the occurrence, post-judgment interest at the requisite rate, and for such other and further relief as this Court shall deem proper, just, and appropriate under the circumstances." [#5 at 4].

Allstate removed the case based on diversity jurisdiction. [#1 at ¶ 20]. The court entered a Scheduling Order in this matter on August 19, 2014 [#17]. In that Scheduling Order, the deadline for amendment of pleadings was due no later than August 30, 2014. [*Id.* at 9-10]. Plaintiff stated in the Scheduling Order that she "anticipates she may seek to amend her complaint to add a claim for punitive damages. Plaintiff notes that she is unable to assert a claim for punitive damages prior to disclosures and conducting discovery in order to show a *prima facie* case." [*Id.*] The Parties proceeded through discovery, and neither Party filed a Motion for Summary Judgment. The court convened a Final Pretrial Conference on July 9, 2015, in which the proposed Final Pretrial Order was approved and filed. [#42, #73]. The Final Pretrial Order does not include any demand for exemplary damages. [#73]. The court then directed the Parties to file any motions *in limine* no later than August 10, 2015, and these motions followed.

## ANALYSIS

**I.   Motion Regarding Injury Finance**

Plaintiff had "some of her care related to the injuries sustained in the motor vehicle accident financed by a lien company, Injury Finance." [#45 at 1]. Plaintiff argues that the amounts paid by Injury Finance should be excluded because they are irrelevant, prejudicial, and under Colorado's common law collateral source rule, inadmissible. [*Id.* at 2-3]. Defendant seeks to introduce the evidence regarding Injury Finance as evidence of the reasonable value of medical services provided. [#60 at 3]. In addition, Allstate argues that Injury Finance does not qualify as a collateral source because Ms. Romero did not provide any form of consideration for the benefit provided by Injury Finance. [*Id.* at 6].

Colorado's collateral source rule consists of two components:  (1) a pre-verdict evidentiary component, as described by the common law and (2) a post-verdict setoff rule, codified at Colo. Rev. Stat. § 13-21-111.6. *See Wal-Mart Stores, Inc. v. Crossgrove*, 276 P.3d 562, 565 (Colo. 2012) (en banc); *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 653 (Colo. 2012) (en banc). Under the pre-evidentiary component of the collateral source rule, a trial court must exclude evidence of amounts paid for medical services to a plaintiff by a third-party collateral source to prevent the factfinder from improperly reducing the damages award. *See Crossgrove*, 276 P.3d at 567. A third party is considered a collateral source if it is wholly independent of the tortfeasor to which the tortfeasor has not contributed. *Id.* (citations omitted).

The operative question for the Motion Regarding Injury Finance is whether Injury Finance constitutes a collateral source. If Injury Finance qualifies as a collateral source, then the Colorado Supreme Court has squarely rejected Allstate's argument that evidence of what Injury

Finance paid for Ms. Romero's medical expenses should be admitted for the purpose of establishing reasonable value of the medical services:

> [T]he pre-verdict evidentiary component of the collateral source rule prevails in collateral source cases to bar the admission of the amounts paid for medical services. Admitting amounts paid evidence for any purpose, *including the purpose of determining reasonable value*, in a collateral source case carries with it an unjustifiable risk that the jury will infer the existence of a collateral source—most commonly an insurer—from the evidence, and thereby improperly diminish plaintiff's damages award.

*See Crossgrove*, 276 P.3d at 567 (emphasis added). Therefore, the court now considers Allstate's argument that Injury Finance is not a collateral source.

Allstate argues that "the Colorado Supreme Court has limited the collateral source rule to instances where a plaintiff 'gives some form of consideration,'" citing *Volunteers of Am. v. Gardenswartz*, 242 P.3d 1080, 1083 (Colo. 2010). I respectfully disagree that *Gardenswartz* limits collateral sources to those where a plaintiff has provided some form of consideration. The *Gardenswartz* court explained that "[a]ny third-party benefits or gifts obtained by the injured plaintiff accrue solely to the plaintiff's benefit and are not deducted from the amount of the tortfeasor's liability." *Id.* The purpose of the collateral source rule was to prohibit a tortfeasor from benefitting, in the form of reduced liability, from compensation in the form of money or services that the victim may receive from a third-party source. *Id.* From an evidentiary perspective, the pre-verdict evidentiary component was put in place to prevent the factfinder from improperly diminishing the plaintiff's damage award due to monies paid by a collateral source.

Nothing in the Colorado Supreme Court's trilogy of collateral source cases—*Gardenswartz*, *Crossgrove*, or *Sunahara*—suggests that cognizable collateral sources are limited

5

to sources for which a plaintiff has provided consideration. Instead, in *Sunahara*, the Colorado Supreme Court explained that a collateral source was "a third party wholly independent from the tortfeasor to which the tortfeasor has not contributed." 280 P.3d at 655. The focus is on how the source is related to the tortfeasor, rather than to the injured party.

Contrary to Allstate's arguments, the language of section 13-21-111.6 does not change that conclusion. Section 13-21-111.6 partially abrogates the common law collateral source rule as to the damages component of the rule, *i.e.*, by allowing post-verdict setoffs *except* in cases where the injured plaintiff had been or would be wholly or partially indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such persons. *Gardenswartz*, 242 P.3d at 1084. If, as Allstate suggests, the plaintiff has to provide some form of consideration in order for a source of benefit to be considered a "collateral source" at all, it is entirely unclear whether the post-verdict setoff contemplated by the statute would have any effect because most, if not all, collateral sources would then fall within the contractual exception.

Therefore, I join Judge Babcock and Judge Arguello in this District in concluding that monies paid by Injury Finance qualify as a collateral source. In *Seely v. Archuleta*, Judge Babcock affirmatively held that Injury Finance was a collateral source, while noting that neither party contested the point:

> As an initial matter, I find that the discounted and written off bills negotiated by Injury Finance on Plaintiff's behalf constitute collateral sources. Under the common law rule, any third party benefits or gifts obtained by a plaintiff are collateral.

Civil Action No. 08-cv-2293, 2011 WL 2883625, at *4 (D. Colo. July 18, 2011). Judge Arguello concluded the amount of medical expenses that are billed, rather than that amount

which is ultimately paid by Injury Finance, is what establishes the amount of damages recoverable under Colorado law for medical expenses sustained by an accident victim. *See Robinson v. Terwilleger*, No. 09–cv–02775–CMA–BNB, 2011 WL 1987619, at *3 (D. Colo. May 13, 2011). Therefore, evidence of the fact that Ms. Romero received benefits from Injury Finance, and the amounts of such benefits, are precluded from trial and Allstate must redact any mention of Injury Finance or other collateral sources from its proposed exhibits.

Allstate will have an opportunity to seek a post-verdict offset for any payments made by Injury Finance, and argue that such payments do not fall within the exception as defined by section 13-21-111.6. But to allow Allstate to introduce evidence of payments by Injury Finance, and then allow it to seek a post-verdict setoff of those same amounts would create the risk that Plaintiff's compensable damages be reduced twice – once by the jury pre-verdict in calculating its "reasonable" value and once again under the statute post-verdict. As Judge Babcock observed in *Seely*, "[t]his cannot be what the Colorado Legislature intended." 2011 WL 2883625, at *5. Therefore, Plaintiff's Motion *In Limine* to Preclude Questions or Evidence Regarding Injury Finance [#45] is GRANTED.

## II.     Motion to Preclude Berns

Allstate seeks to strike Plaintiff's expert on bad faith insurance issues, Lorraine Berns, arguing that Ms. Berns lacks the requisite experience to qualify as an expert, her opinions are inadequately supported, and her testimony impermissibly supplants the role of the trial judge by offering legal conclusions. [#46]. Plaintiff disagrees, and urges the court to allow Ms. Berns to testify, arguing that Allstate's concerns regarding her qualifications go to the weight, rather than the admissibility, of her opinions. [#62 at ¶ 10]. Ms. Romero also contends that while Ms.

7

Berns' expert report contains legal citations and references, Ms. Berns does not intend to "instruct[] the jury on what law applies to this case or what their decision should be," but does intend to refer to the legal standards in order to explain to the jury the origination of the industry standards. [*Id.* at ¶ 17].

A trial court is obliged to act as "gatekeeper" of proffered expert testimony for relevance and reliability pursuant to Rules 401 and 702 of the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–95 (1993). Daubert's "gatekeeping" requirement applies not only to expert testimony based on scientific knowledge and principles, but also to all other expert testimony premised on "technical" or "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quotation omitted). On proper challenge, it is the proponent's burden to establish the admissibility of the proffered expert testimony at issue. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

When Rule 702 is read in conjunction with Rule 704, expert testimony is not proper "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988). Thus, "[w]hile testimony on ultimate facts is authorized under Rule 704 ... testimony on ultimate questions of law is not favored." *Id.* at 808. Therefore, "[t]he expert can refer to the law in expressing his opinion, but he may not tell the jury what legal standards must guide their verdict." *MCC Mgmt of Naples, Inc. v. Int'l Bancshares Corp.*, 468 Fed. App'x. 816, 821 (10th Cir. 2012) (emphasis in original); *see also United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005) ("[A]n expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which

the jury can exercise independent judgment." (citation omitted)). In addition, an expert may not ordinarily "state legal conclusions drawn by applying the law to the facts," as such testimony is typically not helpful to the finder of fact. *A.E. By & Through Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991); *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.").

Even when the court is satisfied that the expert opinion is not an impermissible legal opinion or conclusion, Rule 702 also requires that any proffered expert testimony be "help[ful] [to] the trier of fact to understand the evidence or to determine a fact in issue." Fed. Rule Evid. 702(a). In the context of insurance coverage dispute actions, the Tenth Circuit has repeatedly recognized that trial courts have the discretion to exclude expert testimony regarding the "industry standard," absent an adequate showing of helpfulness to the factfinder. *North American Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th Cir. 2009) (because a properly instructed jury is generally capable of determining issues involved in cases "alleging bad faith denial and investigation of insurance claims," expert testimony seeking to "compare[] the insurance company's actions to the industry standard" may be properly excluded on the ground that it would not "assist the trier of fact") (citing *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (holding same)).

In applying these standards, I conclude that Ms. Berns is qualified as an expert because she has specialized knowledge of the claims handling field arising from both her direct and subsequent consulting, and Allstate's argument regarding her qualifications go to the weight, not admissibility, of her opinions. However, I also conclude that some of her proffered testimony

impermissibly veers into legal testimony. For example, Ms. Berns may not testify or explain to the jury what kind of damages or interest to which Ms. Romero may be entitled. [#46-4 at 4-5]. She will also not be permitted to testify about Duty of Good Faith and Fair Dealing as reflected in the Colorado model jury instruction. [*Id.* at 5]. Nor may she refer to specific statutes when concluding that Allstate's actions were unreasonable. [*Id.* at 13]. While Ms. Berns may state that industry standards require insurance companies to follow the controlling law, Ms. Berns must limit her opinions to those based on an industry standard voluntarily observed by the industry separate from controlling law. *See Turner v. State Farm*, Civil Action No. 13-cv-01843-MSK-NYW, 2015 WL 3526995, at *4 (D. Colo. June 4, 2015).

For instance, to the extent Ms. Berns' opinions are based on industry standards separate from controlling law, she may testify that based on her knowledge and experience, it is her opinion that Allstate's language in its UIM disclosure letter was vague, and it is industry standard that all ambiguities are resolved in favor of the insured. [#46-4 at 7]. Similarly, Ms. Berns may testify to the industry standards as she describes them on page 9 of her Report, in footnotes 4-6, and page 10, in footnote 12. But Allstate will be permitted to cross-examine Ms. Berns about what actually constitutes "industry standards," how she learned of such standards, and what specific "industry standard" was violated by Mr. Camacho or Mr. Miller in the adjustment of Ms. Romero's claim for UIM coverage.

Finally, this court will not permit Ms. Berns to instruct the jury on what conclusion it should reach. Namely, Ms. Berns may not testify that "[b]ased on industry standards Allstate's delays and denials of payment discussed in my report are unreasonable and evidence of C.R.S.

10-3-1115 Improper denial of claims prohibited and Ms. Romero should be eligible for recovery under C.R.S. 10-3-1116 remedies for unreasonable delay and or denial of benefits." [#46 at 7].

Accordingly, Defendant's Motion to Preclude Berns is GRANTED IN PART, and DENIED IN PART.

### III. Motion to Strike Experts

Allstate originally also sought to preclude or limit the testimony of Plaintiff's treating physicians, Dr. Ravi Sachar, Dr. William Miller, and Dr. Jonathan Savage, arguing Ms. Romero had failed to provide an adequate disclosure under Rule 26(a)(2) of the Federal Rules of Civil Procedure. [*See* #59]. Allstate then withdrew its objection to Dr. Sachar's testimony after it had an opportunity to speak with both Dr. Sachar and Plaintiff's counsel. [#68]. At the Final Trial Preparation Conference held on September 11, 2015, counsel for Plaintiff informed the court that she had agreed to limit any testimony by Dr. Miller and Dr. Savage to only information or opinions that were reflected in the medical records from the respective providers that were provided to Allstate. Counsel for Allstate agreed that if the scope of the testimony was so limited, the Parties no longer had a dispute.

Accordingly, this court DENIES Allstate's Motion to Strike Plaintiff's Expert Disclosures [#51], with leave to renew at trial should Plaintiff exceed the agreed upon scope during examination of Dr. Miller and/or Dr. Savage.

### IV. Motion to Amend Complaint

Because Plaintiff seeks to amend her Complaint to add a request for exemplary damages after the deadline set by the Scheduling Order to amend pleadings, the court's consideration is subject to a two-prong analysis. First, a party seeking leave to amend after the deadline set by a

11

Scheduling Order must establish that there is good cause for seeking modification of such order pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.D. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Only after establishing good cause does the court then turn to whether amendment is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *Id.* at 1242; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

The determination of good cause under Rule 16 lies within the sound discretion of the court. Fed. R. Civ. P. 16(b)(4). The question of whether good cause exists considers the diligence of the moving party seeking leave; a party establishes good cause when she demonstrates that the deadline in the Scheduling Order could not have been met despite a party's diligent efforts. *Pumpco*, 204 F.R.D. at 668. A party's delay in performing the necessary pretrial preparation to recognize a claim does not satisfy Rule 16(b)'s good cause standard. *See Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 688 (D. Colo. 2000).

If Plaintiff establishes good cause for the amendment of the Scheduling Order, the court considers whether, under the more permissive standard of Rule 15(a), leave to amend should be granted. Again, the decision whether to permit amendment lies within the sound discretion of the court. *Zenith Radio Corp. v. Hazeltime Research Inc.*, 401 U.S. 321, 330 (1971). When considering whether to allow an amendment to a complaint, the court considers factors such as whether the amendment will result in undue prejudice to the defendant, whether the request was unduly and inexplicably delayed or offered in good faith, and whether the party had sufficient opportunity to state the claim but failed. *See Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir. 1990). In addition, in considering whether to add a party

to the action, the court considers whether the party is properly joined under Rule 20(a)(2), and factors such as undue prejudice, whether the request was unduly and inexplicably delayed, and whether it was offered in good faith. *See State Distrib., Inc. v. Glenmore Distill. Co.*, 738 F.2d 405, 416–17 (10th Cir. 1984).

In this case, Ms. Romero has failed to establish good cause as to why she should be permitted to add a claim for exemplary damages less than one month before trial, after the entry of the Final Pretrial Order, and almost a year after the deadline passed for the amendment of pleadings as set forth in the Scheduling Order. [#17 at 9-10]. As Allstate observed, Plaintiff contemplated amending her Complaint to introduce a demand for punitive damages at the time the Scheduling Order was entered. [*Id.*]. Notwithstanding her awareness, Ms. Romero chose not to take any affirmative steps to seek such an amendment until the eve of trial.

Plaintiff suggests she did not have a basis for an exemplary damages claim until June 30, 2015, when Bill Camacho, the Allstate claims adjuster in this case, provided a third explanation of his calculation of UIM benefits. [#52 at ¶¶ 6-7]. This proposition is belied by the record Plaintiff put before the court. No later than August 2013, before the filing of Plaintiff's Complaint, Plaintiff understood that Mr. Camacho had changed his original explanation as to the value of her claim. *Compare* [#52-2] *with* [#52-1]. Indeed, Plaintiff took Mr. Camacho's deposition on April 16, 2015 and at that time had ample opportunity to inquire about the values. [*Id.* at ¶ 5; #52-3, at 62:5-64:22]. The fact Plaintiff waited until the end of the discovery period to take Mr. Camacho's deposition, and then did not move to amend her Complaint to include punitive damages until a month prior to trial does not satisfy Rule 16(b)'s good cause standard. *See Colorado Visionary Academy*, 194 F.R.D. at 688 (holding that a party's delay in performing

13

the necessary pretrial preparation to recognize a claim does not constitute good cause under Rule 16(b)).

Even if Ms. Romero did not fully understand the import of Mr. Camacho's changing explanations until June 30 – which is difficult to imagine – Plaintiff still waited another two months in seeking leave to amend. There is no explanation for the delay in the proposed Final Pretrial Order filed by the Parties on July 2, 2015.[2] Accordingly, this court concludes that Plaintiff has failed to establish good cause for amendment of the Scheduling Order, and therefore, need not reach the question as to whether amendment would be proper under Rule 15(a). *See Gorsuch*, 771 F.3d at 1242.

## CONCLUSION

For the reasons set forth herein, IT IS ORDERED that:

(1) Motion *In Limine* to Preclude Questions or Evidence Regarding Injury Finance [#45] filed by Plaintiff Bertha N. Romero is GRANTED;

(2) Motion *In Limine* to Preclude Testimony from Plaintiff's Expert Witness, Lorraine Berns [#46] filed by Defendant Allstate Fire & Casualty Insurance Company is GRANTED IN PART and DENIED IN PART;

(3) Amended Motion to Strike Plaintiff's Expert Disclosures [#51] filed by Allstate is DENIED AS MOOT; and

(4) Motion to Amend Complaint and Add Exemplary Damages [#52] filed by Ms. Romero is DENIED.

---

[2] Plaintiff would be required to establish manifest injustice to amend the Final Pretrial Order to include a demand for punitive damages. *See Davey v. Lockheed Martin*, 301 F.3d 1204, 1208 (10th Cir. 2002). And unlike in *Davey*, there was no change in law between the entry of the Final Pretrial Order and the request for amendment.

DATED: September 14, 2015  BY THE COURT:

s/ Nina Y. Wang
Nina Y. Wang
United States Magistrate Judge